IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: EUGENE AND DEBORAH MULLER, Debtors | No. 5:10-bk-73265<br>Ch. 7 |
| IN RE: DONG CHIL KIM and JI WON PARK, Debtors | No. 5:11-bk-74650<br>Ch. 13 |
| IN RE: JASON A. RALSTON, Debtor | No. 5:11-bk-74941<br>Ch. 13 |

## OPINION AND ORDER

Before the Court are six objections to claims that exhibit the most common maladies in this area of bankruptcy law.  Because the same law applies to each of these objections, the Court will conjoin the objections for its order.  The Court has jurisdiction over these objections under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and the resolution of the objections is a core proceeding under 28 U.S.C. § 157(b)(2)(B).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

Although each of the objections before the Court exhibit common problems, each claim is unique within the debtors' or trustee's respective objections.  In the Muller case, the chapter 7 trustee objected to the claim of GMAC for two reasons: first, because GMAC filed its claim as a secured claim; second, because the debtors did not identify the subject vehicle or list GMAC as a creditor in their schedules.  In the Kim/Park case, the debtors objected to and disputed the claim of Bank of America, N.A. because the asserted debt by Bank of America was not substantiated.  And last, in the Ralston case, the debtor objected to three separate claims: (1) Kansas City Water Services Dept. [Kansas City Water], (2) Advanta Bank Corporation [Advanta Bank], and (3) Portfolio Recovery Associates [PRA].  The debtor objected to Kansas City Water's claim because the debt apparently related to an unpaid water bill of one of the debtor's tenants, not the debtor.

Entered On Docket: 10/02/2012

The debtor objected to and disputed Advanta Bank's claim alleging that Advanta Bank was not the party with the legal right to enforce the claim. Finally, the debtor objected to PRA's claim because the debtor did not recognize or schedule a debt to THD Consumer, the account listed on the proof of claim form. Before analyzing each claim, the Court will review the respective burdens of proof that are applicable in claims litigation.

**Claims, generally**

Under the bankruptcy code, a claim is defined as any right to payment. 11 U.S.C. § 101(5); *Dove-Nation v. eCast Settlement Corp.* (*In re Dove-Nation*), 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004). A creditor, the debtor, or the trustee may file a proof of claim against a debtor. 11 U.S.C. § 501. In the event the creditor does not file a proof of claim, an entity that is liable with the debtor to the creditor may. *Id*. According to the code, a claim, "proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a party in interest objects to a claim, then the court shall determine the amount of such claim as of the date of the filing of the petition, unless one of nine enumerated exceptions apply. 11 U.S.C. § 502(b)(1)-(9); *In re Dove-Nation*, 318 B.R. at 150. The nine exceptions found in § 502(b) are "the sole grounds for objecting to a claim and [§ 502(b)] directs the court to allow the claim unless one of the exceptions applies." *Id.*; *see also In re Cluff*, 313 B.R. 323, 331 (Bankr. D. Utah 2004) ("Courts have no discretion to disallow claims for reasons beyond those stated in the statute."); *In re Todd Michael Taylor*, 289 B.R. 379, 384 (Bankr. N.D. Ind. 2003) ("a claim may not be denied for just any reason, but only for one of the reasons Congress has included in § 502(b).").

Under the Federal Rules of Bankruptcy Procedure, a proof of claim is a written statement that sets forth a creditor's claim and shall conform substantially to the Official Form. Fed. R. Bankr. P. 3001(a). Further, when the claim is based on a writing, the original or a duplicate shall be filed with the claim. Fed. R. Bankr. P. 3001(c). If the writing has been lost or destroyed, a supporting statement must be filed with the claim. *Id.* According to the rules, "[a] proof of claim executed and filed in accordance with these

rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Prima facie validity

> simply means that all the facts in the claim are presumed to be true unless disproved by some evidence to the contrary. If a claim's prima facie validity is lost, then the creditor has the initial burden of proving that the claim exists and the amount of that claim. Failure to fulfill this burden results in the disallowance of a creditor's claim.

*In re Cluff*, 313 B.R. at 337 (footnotes omitted).

Prima facie validity is established by substantial compliance with "the spirit of the applicable rules . . . ." *In re Dove-Nation*, 318 B.R. at 152. When complied with, the bankruptcy rules and Official Form are *evidence* of the claim, not simply "a pleading containing arguments and assertions." *In re Cluff*, 313 B.R. at 330. When the claim is based on a writing, additional support for the creditor's claim is required to establish prima facie validity of the claim. The evidentiary support for a claim based on a writing includes, for example, a business record admissible under Federal Rule of Evidence 803(6), a promissory note, a contract, or a negotiable instrument. *Id.* at 332.

Ultimately, the court must balance "the need to provide debtors with sufficient information to assess claims against the goal of not unduly burdening claimants." *In re Marcita Taylor*, 363 B.R. 303, 310 (Bankr. M.D. Fla. 2007). In considering the documentation required for a credit card company to meet its evidentiary burden, one court recognized that to require the company

> to come forward with the original credit card agreement and a manifestation of each electronic recording of a transaction, whether it be in the form of the signed receipt the debtor retains for his or her personal records or the electronic transmission of each use that the credit card issuer records, would unduly burden the parties and would inundate the Court with documents. Such a compilation of information would be lengthy and overly burdensome for all concerned.

*In re Cluff*, 313 B.R. at 334-35. As a result, the court concluded that a summary of the transactions would be sufficient to meet the requirements of the bankruptcy rule. This comports with Federal Rule of Evidence 1006, which allows a proponent to use a

3

summary to prove the content of voluminous writings that cannot be conveniently examined in court. To allow such a summary would also require the creditor to make the originals or duplicates available for examination by the objecting party upon request. Fed. R. Evid. 1006.

To fulfill the requirements of the bankruptcy rule and Official Form, and to give debtors and trustees sufficient information to ascertain the accuracy of the claim asserted, the *Cluff* court determined that a summary should:

> (i) include the amount of the debts; (ii) indicate the name and account number of the debtor; (iii) be in the form of a business record or some other equally reliable format; and (iv) if the claim includes charges such as interest, late fees and attorney's fees, the summary should include a statement giving a breakdown of those elements.

*In re Cluff*, 313 B.R. at 335. Likewise, another court held that in order to be given prima facie effect, an account statement attached to a proof of claim must include the debtor's name; account number; prepetition balance; interest rate; and a breakdown of interest charges, finance charges, and other fees. *In re Armstrong*, 320 B.R. 97, 106 (Bankr. N.D. Tex. 2005). The *Armstrong* court also stated that it would apply the same standard not only to credit card debt, but to "documentation of other claims based on accounts." *Id.* at 106 n.1. If the debt was charged off and sent to a collection entity and the underlying documents were not available, that fact must also be disclosed in the claim. *In re Cluff*, 313 B.R. at 336. A signed copy of the assignment with sufficient information to identify the original account may also be required. *In re Armstrong*, 320 B.R. at 106 (citing *In re Hughes*, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004)).

A proof of claim that does not meet prima facie validity is not disallowed simply because a party in interest filed an objection. The creditor's burden may be met on the face of the proof of claim. Proofs of claims provide "at least some evidence of a demand for payment from the estate and includes the creditor's name, the account number, and amount of the debt." *In re Cluff*, 313 B.R. at 338. To defeat a claim that contains at least some evidence of, but is not entitled to, prima facie validity, a debtor "could make an

allegation supported by a signed affidavit, that some or all of the a [sic] claim was not owed or that the debt had been satisfied." *Id*. This evidence simply needs to refute at least one of the allegations appearing on the face of the proof of claim. *In re Marcita Taylor*, 363 B.R. at 308 (citing *In re Armstrong*, 320 B.R. at 104). If the creditor failed to present any additional evidence in support of its claim, the objecting party's objection could be sustained. At a minimum, a debtor must provide the court with a modicum of evidence to meet or equalize the filed proof of claim; a formal objection is not sufficient. *In re Cluff*, 313 B.R. at 340; *see also In re Marcita Taylor*, 363 B.R. at 308 ("a proof of claim which lacks prima facie validity is quickly disallowed upon a valid objection, unless the claimant then provides sufficient evidence to establish the validity of the claim by a preponderance of the evidence."); *In re Dove-Nation*, 318 B.R. at 152 ("Had the Debtor presented any evidence supporting an objection to the claim, the ultimate burden of persuasion would have shifted to the Claimant to establish its entitlement to the claims.")

In summary, every claimant and every objecting party must proceed under the same burdens of proof. As a base line, a proof of claim is deemed allowed unless a party in interest objects to the claim. 11 U.S.C. § 502(a). Additionally, if the proof of claim conforms substantially with the bankruptcy rules, the proof of claim is considered prima facie evidence of the validity and amount of the claim. Fed. Rule Bankr. P. 3001(f). The burden of proof then shifts to the objecting party to prove one of the nine exceptions set forth in § 502(b) of the bankruptcy code. 11 U.S.C. § 502(b)(1)-(9). Even if the claimant was not entitled to prima facie evidence of the claim, the proof of claim would still be some evidence of the claimant's claim. In that case, the objecting party must come forward with "some evidence to meet, overcome, or at least equalize the statements on the proof of claim." *In re Cluff*, 313 B.R. at 340 (internal citations omitted). In either case, if the objecting party presents evidence sufficient to support the objection to the claim, "the ultimate burden of persuasion would have shifted to the Claimant to establish its entitlement to the claims." *In re Dove-Nation*, 318 B.R. at 152; *In re Armstrong*, 320 B.R. at 104 ("If the objecting party meets these evidentiary requirements, then the burden

of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.").

**Specific Claims and Objections**

The three bankruptcy cases referenced in this opinion feature five objections to claims that are currently before the Court. The Court will address each claim and its respective objection separately.

### Ralston: debtor versus Kansas City Water Services, claimant

In this case, the debtor's first objection is to Kansas City Water's claim against the debtor. According to the debtor, the asserted debt by Kansas City Water was the obligation of the debtor's tenant, not of the debtor. Kansas City Water filed its proof of claim and included on the face of the claim form the name of the creditor and the debtor, the last four digits of the creditor's account identifier, and the amount of the claim: $101.29. The basis for the claim was listed as "Water, Storm, Sewer," and the creditor attached a Summary of Exhibits and Certificate of Service signed by the creditor's Manager of Revenue Protection. The certificate of service stated that a copy of all documents supporting the claim had been served on the trustee and debtor's counsel.

In addition to the debtor's objection to Kansas City Water's claim that was before the Court, at the hearing the debtor introduced Kansas City Water's proof of claim form and a letter from the debtor's counsel to Kansas City Water disputing any liability on the debt and requesting additional verification of the debt through billing statements and a copy of the underlying credit application or agreement. Based on the information before it, including Kansas City Water's certificate of service that it provided the documents to support its claim to the debtor's counsel, the Court finds that Kansas City Water has presented prima facie evidence of a claim. The burden of proof now shifts to the debtor to prove one of the exceptions under § 502(b).

The debtor testified at the hearing that the water service that is the subject of Kansas City Water's claim against the debtor was never turned on in the debtor's name, and that his tenant's obligation to Kansas City Water was not his obligation. As such, the obligation was not enforceable against the debtor. Although not identified by the debtor, the Court finds that this is an exception under § 502(b)(1); specifically, that the claim is unenforceable against the debtor or property of the debtor. Kansas City Water did not appear at the hearing and, ergo, did not meet its burden of persuasion to establish its entitlement to the claim. The Court sustains the debtor's objection and disallows Kansas City Water's claim against the debtor in its entirety.

### Ralston: debtor versus Advanta Bank Corp., claimant

The debtor's second objection in this case is to Advanta Bank's claim against the debtor. According to the debtor, Advanta Bank is not the party with the legal right to enforce the claim because the debt was sold to a securitized trust. The debtor asserts that the collection agent of the successor servicer is not the creditor or owner of the claim. The debtor scheduled Advanta Bank on his Schedule F as having a disputed claim of $1.00. Advanta Bank filed its proof of claim and included on the face of the claim form the name of the creditor, Advanta Bank; the address for notices, in care of Resurgent Capital Services; the name of the debtor; the last four digits of the creditor's account identifier; and the amount of the claim: $3396.54. The basis for the claim was listed as "Unsecured." The claim was signed by a Claims Processor for Resurgent Capital Services with the indication that the signor was the creditor's authorized agent.

Advanta Bank attached to its proof of claim (1) an account detail, (2) a Notice of Termination of Advanta Bank Corp. as Servicer and Appointment of Successor Servicer [Notice of Termination], and (3) a Limited Power of Attorney. The account detail included the amount of the debt as of the date the bankruptcy case was filed; the name and account number of the debtor; a breakdown of the principal, interest, and fees charged; the date the debt was charged off by the original creditor; and a statement that shows that Resurgent Capital Services services the account for the current creditor,

Advanta Bank. The Notice of Termination referenced Deutsche Bank as Indenture Trustee of holders of the notes issued by Advanta Business Card Master Trust and the appointment of the FDIC as receiver for Advanta Bank. Under the terms of the Notice of Termination, Advanta Bank was to continue in the performance of its duties until a Successor Servicer commenced performance. The Indenture Trustee appointed CardWorks Servicing LLC as Successor Servicer, to commence its duties in August 2010. Finally, the Limited Power of Attorney memorializes the retention of Resurgent Capital Services to service the accounts of CardWorks Servicing LLC. The documentation provided by Advanta Bank indicates the following:

1. there is a debt owed by the debtor to Advanta Bank in the amount of $3396.54;

2. that Resurgent Capital Services is the servicing agent for the account;

3. that Advanta Bank was the servicing arm of Advanta Business Card Master Trust;

4. that Deutsch Bank was the Indenture Trustee of Advanta Business Card Master Trust;

5. that the FDIC was appointed receiver for Advanta Bank;

6. that Deutsche Bank, as Indenture Trustee, appointed CardWorks Servicing LLC to commence the duties of Advanta Bank; and

7. that CardWorks Servicing LLC retained Resurgent Capital Services to service its accounts.

In addition to the debtor's objection to Advanta Bank's claim that was before the Court, at the hearing the debtor introduced Advanta Bank's proof of claim form and a letter from the debtor's counsel to Advanta Bank disputing that Advanta Bank owned the subject debt and requesting documentation in support of proof of ownership. Based on the information before it, the Court finds that the Account Detail and other attachments provided by Advanta Bank provide a sufficient summary for the debtor to ascertain the basis and accuracy of Advanta Bank's claim and that Advanta Bank has presented prima

8

facie evidence of a claim.  The burden of proof now shifts to the debtor to prove one of the exceptions under § 502(b).

The debtor's primary argument appears to be that Advanta Bank does not have a right to payment from, or a claim against, the debtor.  According to the debtor, the subject debt may be owned by a trust, but the debtor is not able to ascertain the identity of that trust through the documents attached to Advanta Bank's proof of claim.  Additionally, the debtor argued that the documents attached to the proof of claim conflicted with the actual proof of claim.  The debtor did not identify, and the Court is not able to glean from the debtor's arguments, which exception listed in § 502(b) allegedly applies in this situation.  If the debtor's argument is based on § 502(b)(1), as in his previous objection, he presented no evidence to rebut Advanta Bank's claim, much less its entitlement to have its claim be considered prima facie evidence as to the validity and amount of the claim.  The Court needs at least some evidence to "meet, overcome, or at least equalize" the creditor's claim.  In this instance, the only evidence before the Court are the documents attached to Advanta Bank's claim, which the Court finds sufficient to establish Advanta Bank's claim against the debtor.  Without any additional evidence, the Court overrules the debtor's objection and allows Advanta Bank's claim in its entirety.

### Ralston: debtor versus Portfolio Recovery Assoc., claimant

The debtor's final objection in this case is to PRA's claim against the debtor.  According to the debtor, the debtor does not recognize PRA, successor in interest to Citibank, N.A. (THD Consumer) and did not include the claim on his schedules.  According to the debtor's objection, he has not had a credit relationship with a company named "THD Consumer."  PRA filed its proof of claim and included on the face of the claim form the name of the creditor and the debtor, the last four digits of the creditor's account identifier, the amount of the claim: $5809.11, and a statement that the debtor may have scheduled the account as "THD Consumer."  The basis for the claim was listed as "Credit Card," and the creditor attached an Account Summary and Limited Power of Attorney. The Account Summary included the amount of the debt; the name and account number of

the debtor; a breakdown of the principal, interest, and fees charged; the date the debt was charged off; the name of the original creditor--THD Consumer; an indication that PRA purchased the account from Citibank, N.A. after the account was charged off; and the date of the original loan.  The Limited Power of Attorney designated PRA Receivables Management, LLC to service the account.

In addition to the debtor's objection to PRA's claim that was before the Court, at the hearing the debtor introduced PRA's proof of claim form and a letter from the debtor's counsel to PRA requesting documentation relating to the assignment of the debt to PRA and stating that the debtor does not recognize or acknowledge the debt.  Based on the information before it, the Court finds that PRA has presented prima facie evidence of the validity and amount of its claim.  The burden of proof now shifts to the debtor to prove one of the exceptions under § 502(b).

The debtor testified at the hearing that he did not recognize THD Consumer and disputed any obligation he may have for its claim.  Again, although not identified by the debtor, the Court finds that this is an exception under § 502(b)(1); specifically, that the claim is unenforceable against the debtor or property of the debtor.  With sufficient proof, the burden of persuasion would then shift to PRA to establish its entitlement to the claim.  However, PRA listed its identifier for this claim on the face of its proof of claim as 0681.  Despite the debtor's inability to recognize this claim, the debtor identified on his Schedule F a creditor with an account number that also ended in 0681: Home Depot Credit Services.  The debtor listed this claim as disputed in the amount of $1.00.  The Court finds that PRA and the debtor both refer to the same account when they listed either "THD Consumer" or "Home Depot Credit Services."  Because the debtor did not present any evidence to prove an exception under § 502(b), other than his lack of recognition, the Court overrules the debtor's objection to PRA's claim.  However, based on the debtor's confusion and the fact that he scheduled the Home Depot claim as disputed, the Court overrules the debtor's objection without prejudice to the debtor filing another objection citing a proper exception under § 502(b).

### Kim/Park: debtors versus Bank of America NA, claimant

In this case, the debtors objected to and disputed the claim of Bank of America, N.A. because the asserted debt by Bank of America was not substantiated on its proof of claim. Bank of America filed its proof of claim and included on the face of the claim form the name of the creditor and the debtor, the last four digits of the creditor's account identifier, and the amount of the claim: $700.87. The basis for the claim was listed as "money loaned," and the creditor attached a declaration from the creditor's Bankruptcy Claims Officer stating that the original documentation has been lost or destroyed. The declaration also stated that "The Bank has affixed a true and accurate copy of account record to this Statement." However, an account record was not attached to the declaration.

In addition to the debtors' objection to Bank of America's claim that was before the Court, at the hearing the debtors introduced Bank of America's proof of claim form and a letter from the debtors' counsel to Bank of America disputing the debt and requesting additional verification of the debt through billing statements. Based on the information before it, the Court finds that Bank of America has a valid claim but the claim is not prima facie evidence of a claim because Bank of America failed to attach an account record to its proof of claim. The Court further finds that the debtors have introduced the modicum of evidence required to contradict at least one element of the claim, placing the burden on Bank of America to prove its claim by a preponderance of the evidence.

Because Bank of America failed to appear at the hearing to meet its burden, the Court sustains the debtors' objection to Bank of America's claim, but only in part. The Court is troubled by the debtors' own admission on Schedule F that they owe an undisputed debt to Bank of America for credit card purchases in the amount of $678.00. Bank of America had the burden of proof to establish its entitlement to its claim and would have had the opportunity to introduce the debtors' schedules as additional evidence to support its claim. *In re Dove-Nation*, 318 B.R. at 152. It did not. However, the debtors' schedules were signed under oath, admitting liability to Bank of America in an amount substantially

11

close to Bank of America's claim--an approximate $24.00 difference. *See In re Marcita Taylor*, 363 B.R. at 311 ("bankruptcy schedules can constitute admissions under Federal Rule of Evidence 801(d)(2).") Nor did the debtors list this debt as a disputed debt. To the extent the debtors object to the entire claim of Bank of America, the debtors appear to be taking inconsistent positions and the doctrine of judicial estoppel may be implicated. *Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1142-43 (8th Cir. 1998) ("The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. . . . The underlying purpose of the doctrine is 'to protect the integrity of the judicial process.'" (internal citations omitted)).

The doctrine of judicial estoppel is an equitable doctrine available to a court at its discretion to prevent the "improper use of judicial machinery." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (C.A.D.C. 1980)). The Eighth Circuit Court of Appeals has not defined the elements of the doctrine within this circuit but has recognized and described the majority and minority views:

> the apparent majority view is that the doctrine applies only where the allegedly inconsistent prior assertion was accepted or adopted by the court in the earlier litigation. [citations omitted] Under the minority approach, on the other hand, judicial estoppel applies even where no court has accepted the prior assertion if the party taking contrary positions demonstrates an intent to play "fast and loose" with the courts.

*Hossaini*, 140 F.3d at 1143. The court also stated that judicial estoppel was limited to those instances when a party takes a position that is clearly inconsistent with its earlier position. *Id*. In this instance, the debtors' objection to the entire claim of Bank of America is inconsistent with their own Schedule F. Based on the debtors' own admission under oath of their undisputed debt to Bank of America in an amount that appears to be closely related to Bank of America's claim, the Court sustains the debtors' objection but only for the difference between the amount the debtors listed on their petition and Bank of America's claim. Bank of America's claim is allowed in the amount of $678.00.

12

### Muller: chapter 7 trustee versus GMAC, claimant

In this chapter 7 case, the trustee objected to GMAC's claim for two reasons: first, because GMAC filed its claim as a secured claim and has "failed to demonstrate that it has exercised its rights and remedies with regard to its collateral"; second, because the debtors did not identify the subject vehicle or list GMAC as a creditor in their schedules. GMAC filed its proof of claim and included on the face of the claim form the name of the creditor and one of the debtors, the last four digits of the creditor's account identifier, and the amount of the claim: $8858.13. GMAC listed the basis for the claim as "Automobile Financing," asserted that its claim was a fully secured claim, and stated that the basis for perfection of its claim was a certificate of title and lien notice. GMAC also attached to its claim a copy of the Retail Installment Sale Contract and Certificate of Title. The Retail Installment Sale Contract names one of the debtors as one of the parties to the agreement and is signed by the debtor. The Certificate of Title is also in the name of one of the debtors and reflects that GMAC is the First Lienholder on the face of the title.

In addition to the trustee's objection to GMAC's claim that was filed with the Court, at the hearing the trustee introduced a letter of transmittal from Ally Financial to the debtors' son referencing the subject vehicle and a copy of the Certificate of Title to the vehicle that indicated that GMAC released its lien on the vehicle in July 2011. Based on the information before it, the Court finds that GMAC has presented prima facie evidence of the validity and amount of its claim. The burden of proof now shifts to the trustee to prove one of the exceptions under § 502(b).

The trustee objected to GMAC's claim primarily because GMAC filed its claim as a secured claim and has "failed to demonstrate that [GMAC] has exercised its rights and remedies with regard to its collateral." To have a secured claim, a creditor must have not only a lien on the property, but the property must also be property of the bankruptcy estate. *In re Todd Michael Taylor*, 289 B.R. at 383; 11 U.S.C. § 506(a). An objection to a claim based only on the fact that the claim was filed as a secured claim does not meet any of the exceptions under § 502(b) and does "nothing to undermine the prima facie

13

validity of either the creditors' right to payment or the amount they say was due on the date of the petition." *In re Todd Michael Taylor*, 289 B.R. at 385.

For a court to properly determine the rights of a creditor holding a secured claim, it must perform three separate steps, only the first of which involves the exceptions to the allowance of a claim under § 502(b). *Id*. at 383.  First, the court must determine whether the creditor has a claim or right to payment and, if so, the amount of the claim.  If the creditor does not have a right to payment, the inquiry is complete.  This is the claims process that is discussed in detail throughout this opinion.  If, on the other hand, the court finds that the creditor does have a right to payment, the court must then determine whether the creditor has a lien on property of the bankruptcy estate.  If there is a lien, the creditor holds a secured claim; if there is no lien, or the property is not property of the estate, the creditor holds an unsecured claim against the debtor.  Finally, if the claim is secured, the court must determine the value of the collateral under § 506(a) to establish whether there is any benefit to the estate.  *Id.*; *see also In re Swann*, 149 B.R. 137, 145 (Bankr. D.S.D. 1993) ("Proceeds from a trustee's sale of property are first used to extinguish any valid liens on the property, after which, the remaining proceeds will be distributed to satisfy claims against the estate in accordance with the provisions of Section 726.").

The trustee's objection to GMAC's claim simply because GMAC has a security interest in the property does not implicate any statutory reason for denying the claim.  It appears to the Court that the trustee objected to the claim as a secured claim for equitable purposes: to make sure that GMAC does not share in the assets of the estate and, instead, looks to the value of the collateral to satisfy its claim.  However, chapter 7 contains no provisions that would allow a trustee to make distributions on account of a secured claim, regardless.  *In re Todd Michael Taylor*, 289 B.R. at 386-87.  To accomplish the trustee's objective, Congress provided a different framework involving other sections of the code and different procedural rules--sections 506(a) and 510(c) and Federal Rules of Bankruptcy Procedure 3012 and 7001(8).  *Id*. at 385-86.

The first step under this framework is to have the court determine the secured and unsecured values relative to a creditor's claim. The party requesting that determination of value may file a motion under Rule 3012. After the court conducts a hearing, if the creditor's claim is fully secured, the trustee would have no further obligation concerning the property or the creditor's claim. If, instead, the creditor's claim is over-secured, the trustee may "collect and reduce to money the property of the estate for which the trustee serves" under § 704(a)(1); pay the value of the creditor's secured claim to the creditor, as determined by § 506(a); and distribute the remainder of the proceeds in accordance with § 726, the distribution provision for property of the estate in a chapter 7 case. Finally, if the creditor's claim is undersecured, the creditor would be able to share in the distributions to unsecured creditors to the extent of the unsecured portion of its claim.

A different procedure is implicated if the subject collateral is abandoned or was never part of the estate. In that instance, the creditor's entire claim would be categorized as unsecured. *Id*. at 383 ("In order to have a secured claim, the creditor must not only have a lien upon property but its collateral must also be property of the bankruptcy estate."). To allow the creditor to share in the distribution from the estate as an unsecured claim holder, while also holding a security interest in property of the debtor outside the estate, creates the potential inequity suggested by the trustee's objection in this case. However, the code provides for this situation, too. Section 510(c) states that the court, after notice and a hearing, may equitably subordinate for purposes of distribution all or part of an allowed claim (secured or unsecured) to all or part of another allowed claim. 11 U.S.C. § 510(c); *In re Todd Michael Taylor*, 289 B.R. at 388. This subordination proceeding must be in the form of an adversary proceeding, but would result in the relief suggested by the trustee. The Court realizes "that motions to determine secured status and adversary proceedings may be more cumbersome and inefficient than the path [the trustee] ask[s] the court to follow. That, however, is the path the Bankruptcy Code and the rules of procedure prescribe." *Id*. Because the trustee did not present any evidence to prove an exception under § 502(b) relating to his objection to GMAC's claim as a secured claim, the Court overrules that portion of the trustee's objection.

In support of his objection to GMAC's claim because the debtors did not identify the subject vehicle or list GMAC as a creditor in their schedules, the trustee stated that during his investigation of this case, he learned that the subject vehicle had been in the possession of and driven by the debtors' son. The trustee testified that he discovered that before the debtors filed their bankruptcy petition, the son had sold the vehicle and satisfied the debt to GMAC. Hence, the debtors did not list the vehicle or schedule GMAC as a creditor on their bankruptcy petition and schedules. The accuracy of the trustee's understanding is reflected on the documents the trustee introduced in support of his objection: a copy of the Certificate of Title to the vehicle that indicated that GMAC had released its lien. Although the trustee did not identify a specific exception under § 502(b), the Court finds that this is an exception under § 502(b)(1); specifically, that the claim is unenforceable against the debtors or property of the debtors because GMAC's lien was released and the obligation satisfied. GMAC did not appear at the hearing and, consequently, did not meet its burden of persuasion to establish its entitlement to the claim. For the reasons stated, the Court sustains the trustee's objection to GMAC's claim under § 502(b)(1) and disallows GMAC's claim in its entirety, but overrules that portion of the trustee's objection to GMAC's claim that was based solely on GMAC filing the claim as a secured claim.

## Conclusion

To conclude, the Court would like to share the words of Judge Boulden from the *Cluff* case:

> In this decision, the Court has attempted to strike a balance as well as to provide both debtors and creditors clear standards to interpret and apply, but, as the length of this opinion demonstrates, a bright line test that covers the multiplicity of variations in claims is not possible. Employing these standards should provide debtors and creditors with a clear and helpful pathway to proceed through the thicket of claims disallowance.

*In re Cluff*, 313 B.R. at 343.

IT IS SO ORDERED.

/s/ Ben Barry

Ben Barry
United States Bankruptcy Judge
Dated: 10/02/2012


cc: John T. Lee, chapter 7 trustee
Joyce B. Babin, chapter 13 trustee
Todd F. Hertzberg, attorney for debtors (Kim/Park; Ralston)
Esther M. White, attorney for debtors (Muller)

17